**PACIFIC EMPLOYERS INS. CO. v. BARNETT.**

**No. 15134.**

Court of Civil Appeals of Texas.
Fort Worth.
April 28, 1950.

Rehearing Denied May 26, 1950.

332

Dawson, Jones & Parish, and Elmer H. Parish, all of Wichita Falls, for appellant.

E. W. Napier, of Wichita Falls, for appellee.

McDONALD, Chief Justice.

Appellee Barnett, plaintiff in the trial court, recovered judgment on a favorable jury verdict for one hundred weeks workmen's compensation benefits for the loss of an eye. Art. 8306, sec. 12, Vernon's R.C.S. Appellant, the insurance carrier, presents the contentions herein discussed under ten points of error.

It is first argued that there is no evidence, or, under an alternative point, that the evidence is insufficient, to support the claim that the loss of vision in the eye was caused by the alleged accidental injury.

Appellee testified that he was engaged on the occasion in question in hammering on an iron pipe for the purpose of knocking rust off the pipe, and that something hit him in the eye; that he was taken to a first aid man; that the first aid man undertook to remove the particle from his eye; that the eye continued to hurt him so he went to see a doctor, who in turn referred him to a physician who was a specialist; that he had never had any trouble with his eye before the incident described; that he noticed on that day that he was losing his vision, that the eye was then like it was at the time of trial. The evidence is amply sufficient to show that he had practically no vision in the eye from that time on, and that there was no possibility of a recovery of vision in the eye. The medical testimony is to the effect that he was suffering from optic neuritis at the time he was examined by the specialist a few days after the alleged injury, and that the neuritis resulted in optic atrophy. Appellant's argument is that the medical evidence shows without dispute that the claimed injury to the eye could not have produced the conditions which were described by the physicians who testified. We believe that appellant's arguments overlook some of the evidence in the record. As we have said, appellee testified that he noticed right after he was hit in the eye that he had lost his vision, and that his eye was in the condition then that it was in at the time of trial. We construe this particular testimony as meaning that his vision was then like it was at the time of trial, since ap-

pellee did not undertake to testify as to the condition of the optic nerve or otherwise undertake to give a technical description of the condition of his eye. He did say that his eye was red and infected, but we do not consider that he was attempting to do more than venture a lay opinion based on the appearance of the eye to him as a layman. Appellant says that the medical testimony shows conclusively that the alleged injury could not have produced the immediate loss of vision without leaving visible evidence in the eye itself by way of scars or other traces of the injury, and that it would have taken at least three days for infection to have traveled from the front part of the eye to the optic nerve. Dr. Adams, one of the physicians who testified, said that a penetration of the eyeball by a very small piece of steel could have caused the injury to the optic nerve which was observed by the physicians who examined him, and that it would have been possible for a fine sliver of steel to have penetrated the eyeball without leaving a scar or other trace of enough consequence to be noticed. The statement of Dr. Adams just referred to would not establish, by itself, either that there had been a penetration of the eye or that such a penetration caused the loss of vision, but the statement is, we think, sufficient to support a refusal by the jury to accept as controlling the opinions of appellant's medical witnesses to the effect that the damage to the optic nerve could not have been caused by the injury suffered by appellee. Thus we would have left the testimony of appellee, which is not overcome as a matter of law by that of the medical witnesses, nor rendered so unbelievable as to require us to say that the verdict is against the great preponderance of the evidence, that something hit him in the eye as he was hammering the pipe, that his loss of vision was noticed immediately thereafter, and that his vision had been normal before that time. Under the record before us, we are not able to say either that there is no evidence, or that the evidence is insufficient, to support the findings of accidental injury causing the loss of vision.

■ Appellee failed to file his claim with the Industrial Accident Board within six months, and undertook to excuse the delayed filing by showing good cause for the delay. Art. 8307, sec. 4a. The issue submitted to the jury inquired only if appellee had good cause for not filing within the six month period. It is settled that the inquiry should have been as to good cause for not filing up to the time the claim was filed with the Industrial Accident Board. Williamson v. Texas Indemnity Ins. Co., 127 Tex. 71, 90 S.W.2d 1088. Appellee seeks to avoid reversal for the error in submission by pointing out that no objection was made to the issue when it was submitted, and also by relying on the doctrine of implied findings which may prevail when there is a failure to submit to the jury one of several questions which, taken together, go to make up a ground of recovery or of defense.

■ It is the general rule that objections to the charge are waived unless made at the proper time and in the proper manner in the trial court, but it is more than a mere objection to the form of the good cause issue that is involved here. The matter of good cause was submitted in three questions, the first inquiring if a named doctor told appellee that he did not think the loss of vision was caused by an injury, the second if appellee relied on the doctor's statement, and the third if such reliance amounted to good cause for failure to file the claim within six months. The fact that good cause existed for six months after the accident did not relieve appellee of the consequences of failure to file the claim within the required time. There was submitted to the jury and answered by the jury an issue that did not control the outcome of the case. The fact found was immaterial. Failure to object to an immaterial issue cannot convert the immaterial finding into a material finding. To put it another way, the finding that good cause existed for six months cannot, for lack of objection to it, be treated as a finding of the existence of good cause during the period of time that matters, to-wit, up to the time the claim was filed. The jury was not asked

about the existence of good cause during the time that was material, and we cannot know, from their answer to the question that was asked, what they would have answered to a different question.

The problem we have is not the submission of a material issue in some improper manner, but the failure to submit a material issue. We are thus brought to the question of implied findings. Rule 279, Texas Rules of Civil Procedure, provides in part that where a ground of recovery or of defense consists of more than one issue, if one or more of the issues necessary to sustain such ground of recovery or of defense, and necessarily referable thereto, are submitted to and answered by the jury, and one or more of the issues are omitted, without objection, or request for submission, and there is evidence to support a finding thereon, the omitted issue or issues shall be deemed as found by the court in such manner as to support the judgment. Appellee argues that the rule is applicable to the situation before us. We would agree with appellee on this if there had been a total failure to submit the third of the three questions which made up the good cause issue. Under the letter of the rule, and with good reason, we could reasonably have implied a finding on the omitted issue such as would support the judgment. But it is our belief that there is not room for such an implication in the present case. The reasonable inference is that the court submitted the good cause question to the jury under the erroneous impression that the existence of good cause for six months satisfied the requirements of Art. 8307, sec. 4a, and that he rendered judgment on such erroneous theory of law, rather than on an implied finding that good cause existed up to the time the claim was filed. The judgment recites the substance of the various findings of the jury, including those, to quote from the judgment, "that Doctor Egdorf told the plaintiff that he did not think that the plaintiff's loss of vision was caused by the injury; that the plaintiff relied upon Doctor Egdorf's statement, and such reliance amounted to good cause for

the plaintiff's failure to make his claim under the Workmen's Compensation Law within six months of the happening thereof; * * *" It is not to be presumed that the court submitted an issue which he knew to be an immaterial one. The court's charge and his judgment plainly imply that he relied on the express findings of the jury, and not on a finding of his own on an unsubmitted issue, in rendering judgment for appellee. It being undisputed that the claim was not filed within six months, and there being no finding of good cause for delay in filing until it was filed, the judgment awarding compensation cannot stand.

In view of the above holding, it is not necessary to discuss the contention advanced by appellant that the evidence is insufficient to sustain the finding of good cause.

In his argument to the jury appellee's counsel said: "Now the Court asked you whether or not he has good cause. That is another way they would have to excuse themselves of paying this boy under the law if he failed to comply strictly with the law. Unless he had a good excuse for not filing it they will not have to pay him."

The argument plainly informed the jury of the effect of the answers to the good cause issue, and must have been made for that purpose. The error was not one that would have been cured by an instruction from the court to the jury to disregard the argument. The case is like that where the jury is told that the plaintiff cannot recover if it is found that the accident was unavoidable. Airline Motor Coaches v. Curry, Tex.Civ.App., 191 S.W. 2d 98; Hodges v. Alford, Tex.Civ.App., 194 S.W.2d 293. The case is distinguishable from Pacific Employers Ins. Co. v. Gage, Tex.Civ.App., 199 S.W.2d 537, because in the cited case the attorney did not directly tell the jury, as was done here, that the plaintiff could not recover unless he had good cause for the delay in filing his claim.

Reversible error was committed in the argument of counsel for appellee in

commenting on the failure of appellant to produce at the trial certain witnesses who were not shown to be in the employ or subject to the control of appellant. Lottman v. Cuilla, Tex.Com.App., 288 S.W. 123; Service Mutual Ins. Co. v. Blain, Tex. Civ.App., 135 S.W.2d 745, writ dis. c. j.; Stewart v. Shoemake, Tex.Civ.App., 225 S.W.2d 873, writ ref. n. r. e.

We do not find reversible error in the remark of appellee to the effect that after the injury his eye was red and infected. He did not purport to testify as an expert, and we doubt if the jury treated the remark as anything other than the unexpert opinion of a lay witness, based on the appearance of the eye. We suggest, however, that on another trial it would be better not to permit appellee to express the opinion that his eye was infected unless based on something more substantial than the appearance of the eye. There are many situations where a layman could state with good reason that infection was present, as, for instance, in a surface wound, but in the present case it would perhaps be better not to permit appellee to express his belief that the eye was infected merely because it looked red and inflamed. The presence or not of infection in the eye in the case before us was not something that ordinarily could have been determined by any one other than an expert.

Citing Zurich General Accident & Liability Ins. Co. v. Young, Tex.Civ. App., 202 S.W.2d 338, writ ref. n. r. e.; and Texas Indemnity Ins. Co. v. Briggs, Tex. Civ.App., 128 S.W.2d 861, writ dis. c. j., appellant correctly contends that it was improper to allow interest on past due installments of compensation in the absence of pleading therefor.

Under its tenth and last point appellant argues that it is shown without dispute that there was not such total loss of vision as to entitle appellee to recover for the loss of the eye. We think that the evidence is sufficient to support the verdict in this respect.

For the errors discussed, the judgment is reversed and the cause is remanded.